### DUNK v. DUNK.

(Supreme Court, Appellate Division, Third Department. May 4, 1904.)

1. NOTES—CONSIDERATION—EVIDENCE.
> In an action on a note, evidence examined, and *held* sufficient to show a consideration.

Appeal from Judgment on Report of Referee.

Action by Alfred O. Dunk against Eliza Dunk, executrix of Alfred Dunk, deceased. From a judgment for defendant on report of a referee, plaintiff appeals. Reversed.

This action arises under the reference of a disputed claim made by the plaintiff against the estate of the defendant's testate. Judgment has been entered on the report of the referee dismissing the claim, with costs, and plaintiff appeals.

The plaintiff seeks to recover upon a note, of which the following is a copy:

"$10,020.            Binghamton, May 4, 1897.

"On demand I will pay to Alfred O. Dunk, or order, Ten Thousand and twenty dollars, payable at the First National Bank, of Binghamton, N. Y., Interest at the rate of five per cent. (after demand).        Alfred Dunk."

It is also claimed on behalf of the plaintiff that Alfred Dunk, maker of said note, joined with him in a memorandum or agreement bearing the same date as the note, of which the following is a copy:

"Whereas, Alfred Dunk has given A. O. Dunk a certain note for Ten Thousand and twenty dollars, for amount due on a certain trust fund held by him as per agreement with Alfred Allen Dunk (now dead) and Alfred Dunk, regarding a certain Ten Thousand dollar life insurance policy on the life of said Alfred Allen Dunk. Whereas, said sum of Ten Thousand and twenty dollars, which I received from said insurance company (less a small cost incurred in collection, for drawing papers, etc.) amounts to Ten Thousand and twenty dollars being the amount of said note.

"Now, therefore, it is agreed further, that said Alfred O. Dunk will not sell or dispose of said note during the natural life of said A. Dunk, and A. Dunk agrees to pay the same as soon as he can sell some property or secure money.

"A. Dunk also agrees not to sell property without paying said note with the proceeds. If A. Dunk dies before full payment is made, then this note is to become a first lien on all his assets—real and personal property.

"Signed in duplicate, this 4th day of May, in the year of 1897. For value received we herewith affix our names to this agreement.       Alfred Dunk.
                                     "A. O. Dunk."

It is claimed by the plaintiff that the note was given for insurance moneys received by said Alfred Dunk upon a policy of life insurance upon the life

of the plaintiff's father, Alfred A. Dunk, as a trust fund for the benefit of the plaintiff, Alfred O. Dunk, who is the son of said Alfred A. Dunk and the grandson of said Alfred Dunk. The policy in question was issued in 1874 by the Mutual Life Insurance Company of New York for the amount of $10,000 upon the life of said Alfred A. Dunk, and was by its terms made payable to said Alfred Dunk, if living, and, if not living, then to said Alfred A. Dunk, his executors, administrators, and assigns. Alfred A. Dunk died in the fall of 1879 at the age of 36 years, during the continuance of said policy, and the sum of $10,044 was paid by said company under it to said Alfred Dunk on the 2d day of March, 1880. The plaintiff at that time was about 7 years of age. Alfred Dunk, the grandfather, died September 2, 1898, at the age of 85, leaving, him surviving, his widow, the defendant Eliza Dunk, besides two grown-up daughters, Mary M. Dunk and Sarah E. Roberson (the latter by a former wife); also the plaintiff and his sister, the children of his deceased son, Alfred A. Dunk. He left an estate valued at from $30,000 to $32,000, and a will, by which he gave to his widow his residence, with the furniture therein, absolutely, and also a life estate in all the rest of his property, with the remainder to be given one-half to his daughter Mary M. Dunk, one-fourth to his daughter Mrs. Roberson, one-eighth to the plaintiff, and the remaining one-eighth to the plaintiff's sister. While the said Alfred Dunk resided in Binghamton, and died there, he was a silent partner in the drug business with his son Alfred A. Dunk at Saginaw, Mich., for a number of years prior to his son's death. The defenses interposed to said claim were that the signatures of Alfred Dunk to said note and agreement were forgeries, and that the note was void for want of consideration.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

George B. Curtiss, for appellant.
D. H. Carver, for respondent.

CHESTER, J. The learned referee, in deciding the case, has found that the plaintiff has failed to establish by satisfactory proof a consideration for the note in question, and for that reason alone he has dismissed the claim. He has not passed upon the principal question litigated upon the trial before him, viz., as to the genuineness of the note and the agreement. He has assumed, however, without expressly finding it as a fact, that the signature to the note is genuine. He has not found that the signature of Alfred Dunk to the agreement is a forged one, nor has he found that it is genuine. The plaintiff had the testimony of six witnesses, some of whom had seen Alfred Dunk write, three of whom were sworn as experts, and judged by comparison of the disputed signatures with admittedly genuine signatures, and all of whom gave it as their opinion that both of these disputed signatures were genuine. The defendant, on the other hand, had the testimony of a like number of witnesses, three of whom also were experts, and all of whom gave a contrary opinion. The testimony for and against the genuineness of the signature to the note followed as nearly along the same lines as the evidence relating to the disputed signature upon the agreement as it well could, considering that they were different signatures, and one was written with pencil, and the other with ink. So that, upon the evidence upon this subject in the case, if the referee properly assumed that the signature to the note was genuine. he must also have assumed that the disputed signature upon the agreement was genuine; and, if it is assumed that that agreement is a valid contract between the parties, it. furnishes strong corroboration of the testimony given by the plain-

tiff's mother, and, taken with her testimony, proves that the note was given for a valid consideration, and leads us to the conclusion that the referee was in error in holding otherwise.    The testimony of the plaintiff's mother was to the effect that the policy of insurance was taken out by his father and made payable to his grandfather for the purpose of securing the latter against loss in the partnership business, and, in the event of that business being wound up without liability to him, he agreed with plaintiff's father that the insurance moneys were to be held in trust by him for the benefit of the plaintiff until the latter arrived at the age of 21 years, and then be paid to him.    It is clearly proven that the partnership business was wound up without loss to the grandfather, and with a substantial profit to his credit.    While the referee has found that the evidence in the case, which in that respect was largely given by the plaintiff's mother, is insufficient to sustain such an agreement, in coming to that conclusion he has apparently given no force to the disputed memorandum or agreement, the signature to which he has practically assumed to be genuine.    The agreement starts out with the following recital:

"Whereas, Alfred Dunk has given A. O. Dunk a certain note for Ten Thousand and twenty dollars, for amount due on a certain trust fund held by him as per agreement with Alfred Allen Dunk (now dead) and Alfred Dunk, regarding a certain Ten Thousand dollar life insurance policy on the life of said Alfred Allen Dunk."

While it is not here recited in express terms that the "amount due" is due to Alfred O. Dunk, the plaintiff, the fair inference is that the amount is due to the person to whom it is recited the note referred to has been given for the "amount due," namely, to said Alfred O. Dunk. Here, then, is the admission on the part of Alfred Dunk that he holds a trust fund created by an agreement with Alfred A. Dunk, who was his deceased son, and the further admission that there is the sum of $10,020 due to the plaintiff on such trust fund.

We are not assuming to decide as to the genuineness of either the note or the signature on the disputed agreement, for we have not felt it incumbent upon us, upon the present appeal, to examine or decide those questions, they not having been decided or passed upon by the learned referee; but, following his assumption that the note in question is genuine, and the assumption which necessarily follows, that the disputed agreement is also genuine, we conclude that the referee was in error in holding that there was a failure to prove a consideration for the note, for the disputed agreement itself, if genuine, with the other evidence in the case, proves such consideration.

We think it essential to the proper disposition of this case that those questions be decided, and that there should be a new trial, to the end that, if the assumption upon which the decision has been made is correct, the plaintiff may recover, and, if the assumption is not correct, the court upon the new trial may decide that the signatures are forgeries, and give judgment accordingly.

Judgment reversed on the law and on the facts, the referee discharged, and a new trial granted, with costs to the appellant to abide the event.    All concur.